**F I L E D**
CLERK, U.S. DISTRICT COURT

04/20/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**(UNDER SEAL)**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JOHNNY MARTINEZ,<br>  aka "Crow,"<br>  aka "Gumdrop,"<br>ROBERT AGUIRRE,<br>  aka "Rob,"<br>DENNIS ORTIZ,<br>  aka "Woody,"<br>  aka "Socrates,"<br>OMAR MEJIA,<br>  aka "Cruz,"<br>  aka "Rascal,"<br>MIGUEL JOSE ALVARADO,<br>  aka "Grumpy,"<br>LUIS HERIBERTO VASQUEZ,<br>  aka "Moss,"<br>  aka "Little Shooter,"<br>  aka "Shooter,"<br>MICHAEL COOPER,<br>  aka "Shaggy,"<br>GREGORY MUNOZ,<br>  aka "Louie,"<br>  aka "Louis,"<br>  aka "Snoopy,"<br>  aka "Snoop," | No. 8:22-cr-00034(A)-CJC<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 1959(a)(1), (3), (5), (6): Violent Crimes in Aid of Racketeering Activity; 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Heroin; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(i), (b)(1)(B)(viii), (b)(1)(C): Distribution of and Possession with Intent to Distribute Methamphetamine and Heroin; 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), (j)(1): Using and Carrying a Firearm During and in Relation to, and Possession of a Firearm in Furtherance of, a Crime of Violence, and Brandish and Discharge of a Firearm, Resulting in Death; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms |

ABRAHAM GUARJARDO,
  aka "Abe,"
  aka "Grumpy,"
ROBERT MARTINEZ,
  aka "Lil Rob,"
  aka "Blacky,"
BRENDA VANESSA CAMPOS MARTINEZ,
  aka "Miss V,"
  aka "Vanessa,"
DANIELLE CANALES,
YSRAEL JACOB CORDOVA,
  aka "Trips,"
  aka "Trippy,"
RICARDO VALENZUELA,
  aka "Solo,"
KEVIN TREJO,
  aka "Minor,"
JAMES MENDEZ,
  aka "Lil Buck,"
  aka "Buck,"
MIKE ESCOBAR,
  aka "Risky,"
FRANK MOSQUEDA,
  aka "Demon,"
  aka "Pride,"
MHER DARBINYAN,
  aka "Hollywood Mike",
ROBERT AMEZCUA,
  aka "Flaco,"
JONATHAN MARTINEZ,
  aka "Fabian,"
  aka "Peanut,"
ALEX GONZALEZ,
  aka "Hitman,"
  aka "Hector,"
ROBERTO ZAYAS,
  aka "Midnight,"
SAUL HERERRA,
  aka "Sinner,"
MARK COOPER,
  aka "Reckless,"
ORLANDO ARBALLO,
  aka "KO,"
MEGAN MORENO,

and Ammunition; 18 U.S.C.
§ 1963, 21 U.S.C. § 853, 18 U.S.C.
§ 924(d), 28 U.S.C. § 2461(c):
Criminal Forfeiture]

2

ANDRES ALBA,
   aka "Doctor,"
   aka "Dre,"
NATIVIDAD GALVAN,
   aka "Naty,"
LORENZO GALVAN,
   aka "Lalo," and
LORRAINE ROBLES,

          Defendants.

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS MARTINEZ, AGUIRRE, ORTIZ, MEJIA, ALVARADO, VASQUEZ, COOPER, GUARJARDO, R. MARTINEZ, CAMPOS, and CANALES]

A.   GENERAL ALLEGATIONS

At times relevant to this First Superseding Indictment:

1.   The Orange County Mexican Mafia, also known as "La Eme" ("OC Mexican Mafia"), was a "gang of gangs" comprised mostly of senior members of California Hispanic street gangs who came together to control and profit from the activities of Hispanic gangs operating in Southern California.  La Eme was established in the 1950s by Hispanic youth inmates at the Deuel Vocational Facility, but over time had morphed into an international criminal organization. Members and associates of the OC Mexican Mafia engaged in, among other things, narcotics trafficking, witness intimidation and retaliation, acts involving murder, and aggravated assault.  The OC

Mexican Mafia operated in the Central District of California and elsewhere.  Members of the OC Mexican Mafia were referred to as "Carnales" or "brothers."  To become a brother, a gang member must have a distinguished reputation for "putting in work" on behalf of the OC Mexican Mafia, meaning the gang member had murdered or assaulted enemies and rivals of the OC Mexican Mafia.  Prospective members were expected to provide financial assistance to OC Mexican Mafia members, and to follow the OC Mexican Mafia's rules governing the streets and correctional institutions.

2.   Members of Hispanic street gangs in Southern California were referred to as "Sureños" or "Southsiders."  Sureños were associates of the OC Mexican Mafia and fell under the control of the OC Mexican Mafia's members.  Members of the OC Mexican Mafia considered Mexican nationals, often referred to as "Paisas," and Hispanic-American citizens who were not members of a recognized gang, generally referred to as "Residents," fell under the OC Mexican Mafia's control while in custody.  Paisas and Residents who were trusted by OC Mexican Mafia members could participate in and be given positions in the OC Mexican Mafia's affairs.  Sureños, whether in custody or on the streets, operated as soldiers and workers for the OC Mexican Mafia.  Being loyal to the OC Mexican Mafia was an integral part of being a Southern California Hispanic street gang member.  It was understood that when individuals joined Southern California gangs, they were joining an entity loyal to the OC Mexican Mafia.  Members of such gangs were expected to, and were proud to,

carry out the orders of the OC Mexican Mafia member in control of their neighborhood and custody facility, because "doing work" for the OC Mexican Mafia increased their status and reputation.  Some gangs included in their name the number "13," denoting the letter "M," or "eme" in Spanish, in order to demonstrate their loyalty and allegiance to the OC Mexican Mafia.

3.    The Mexican Mafia also aligned with Armenian Power, also known as "AP," a Los Angeles street gang whose membership consisted primarily of individuals of Armenian descent, as well as of other countries within the former Soviet bloc.  The relationship between the Mexican Mafia and Armenian Power was symbiotic: The Mexican Mafia, which has large numbers of incarcerated members and associates, provided protection and status to Armenian Power members and associates within prison. In exchange, Armenian Power members and associates assisted Mexican Mafia members and associates with criminal activities within and outside of prison.  As a result, Armenian Power was considered akin to Southern Hispanic street gangs loyal to the Mexican Mafia, and AP members were treated like Sureños.

4.    Members and associates of street gangs controlled by and affiliated with the OC Mexican Mafia were required to pay monthly "taxes," called "respects," to members of the OC Mexican Mafia, the payment of which allowed such street gangs to maintain control and exert influence over their territories, enabling them to distribute illicit drugs and engage in other criminal activity. These "taxes" also ensured the protection of the gang's members once they entered

prisons and jails.  The "taxing" and control applied to activities both in and out of jails and prisons.

5.   Members of the OC Mexican Mafia divided control of specific areas within Southern California and the Hispanic gangs in those areas.  The OC Mexican Mafia brother who had the rights to a specific area controlled the sale of drugs and collection of taxes within the area, was entitled to a share of criminal proceeds from criminal activities committed in the area, and oversaw the maintenance of discipline over the various street gangs and members from that area.

6.   Control over a specific area also included control over the prisons and jails within the area.  Yards and other units within a jail and prison were considered by the OC Mexican Mafia to be territory just as much as a neighborhood on the street.  By exercising control over inmates in the prison and jail systems in Orange County, primarily through violence and threats of violence, the OC Mexican Mafia was able to control the criminal activities both inside and outside of custodial facilities.  In general, one member of the OC Mexican Mafia had control of and rights to a specific facility.  That member, whether incarcerated in that facility or not, controlled the smuggling of drugs into the facility, the collection of taxes from the sale of those drugs, extortion within that facility, and the maintenance of discipline within the facility.  At any time, one OC Mexican Mafia member might control the entire Orange County prison system; or alternatively, control of various facilities

within the prison system might be divided among different members of
the OC Mexican Mafia.

     7.   OC Mexican Mafia members carried out their criminal
activities with the help of associates, often gang members living and
working in an OC Mexican Mafia member's area of control.  Some of
these trusted associates acted as "shot-callers" or "mouth-pieces,"
that is, high-level associates who had been given the authority to
conduct enterprise affairs, such as collecting extortionate taxes and
drug-trafficking proceeds and enforcing discipline in their
particular areas of control.  Each shot-caller worked directly under
the authority of the OC Mexican Mafia member who appointed him.  The
shot-caller coordinated the activities of the associates and was
responsible for ensuring that the OC Mexican Mafia member's orders,
whether in a neighborhood or jail or prison facility, were carried
out.  Shot-callers were located both inside and outside of jail and
prison facilities.  Shot-callers were oftentimes referred to as
"Camaradas," the Spanish word for "comrades," by OC Mexican Mafia
members.  Shot-callers often referred to OC Mexican Mafia members as
"Tio," the Spanish word for "uncle," or other terms of deference.

     8.   The OC Mexican Mafia member in control of a specific
custodial facility put together a team of trusted associates to
manage and facilitate the criminal activities within the facility.
The OC Mexican Mafia's leadership within the prison or jail was known
as a "Mesa."  The Mesa was comprised of trusted associates chosen by

the OC Mexican Mafia member in charge of the facility.  The Mesa could include the shot-caller for that facility.  If the shot-caller was not on the Mesa, the Mesa would report directly to the shot-caller acting on behalf of the OC Mexican Mafia brother.

9.   OC Mexican Mafia members required inmates to pay respects on narcotics and other contraband, including cellphones smuggled into the correctional institution and sold within the facility.  The money was generally collected by the "Mesa" or "shot-caller" and made to a secretary or facilitator outside of the facility, using Green Dot and other forms of electronic payment, who would then forward the money to the OC Mexican Mafia brother who controlled that facility. Another common method that OC Mexican Mafia members employed to make money was taxing Hispanic gang members and associates who violated enterprise rules, as well as those who wanted to engage in profitable criminal activities in areas controlled by the OC Mexican Mafia.  If the gang member or associate did not pay the demanded sum, or had violated OC Mexican Mafia rules, an OC Mexican Mafia leader commonly would order that the person be assaulted until that individual complied.  Alternatively, if the non-compliant individual refused to pay, or if the enterprise was not able to punish the individual, the OC Mexican Mafia could extort or punish family members, close associates, members of that person's gang, or others related to the person.  If a person or gang did not meet the OC Mexican Mafia's payment demands, they were subjected to violence until they complied.

10.   The OC Mexican Mafia profited from others selling narcotics within the territory of the enterprise by working together to collect a portion of the proceeds of drug trafficking conducted by street gang members and others in and around Orange County and the Orange County prison system.   On the streets, profiting from drug trafficking was done by taxing drug dealers.   All drug dealers who operated in an area controlled by the OC Mexican Mafia were required to pay a percentage of their profits from the sale of drugs to the enterprise.   If the drug dealer did not pay, he would not be allowed to sell drugs in that area, under threat of assault and even death.

11.   The OC Mexican Mafia had self-imposed rules handed down by the OC Mexican Mafia members to the shot-callers who facilitated the imposition of the rules using Sureños.   These rules, referred to as "reglas," were imposed to maintain fear and compliance among Sureños, among other reasons.   Two of the more important rules were: (1) the requirement that all associates carry out a request from the OC Mexican Mafia member in control; and (2) the prohibition on cooperating with law enforcement.   Should a gang member break one of these rules, discipline would be imposed by the OC Mexican Mafia brother in control or his designated shot-caller.   Discipline was frequently imposed in the form of a fine or an assault.   The most serious form of discipline was being put on the "green light" list, also known as being "greenlighted."   Being placed on the green light list meant that every Sureño was obligated to severely assault the greenlighted person if they saw him, even if death was likely to

9

result.  Only members of the OC Mexican Mafia were able to put a

person, group, or entire gang on the green light list.  Those who

were put on a green light list could be removed by the payment of a

significant fine or an agreement to put in work for the enterprise,

such as committing a violent act.  Failure to pay monthly respects

could result in a whole gang receiving a greenlight, meaning that all

members of the gang were subjected to assaults by OC Mexican Mafia

members and associates, until the respects were paid.

      12.  Communicating with Orange County street gangs and other OC

Mexican Mafia members and associates, both inside and outside of jail

and prison facilities, was necessary to facilitate the criminal

enterprise.  Messages, including instructions and orders, were sent

in a variety of ways to avoid law enforcement detection.  OC Mexican

Mafia members used contraband cellphones, prison system e-mails,

letters, "kites" (notes smuggled by prisoners), "verbals" (a verbal

message, typically of a sensitive nature, passed from one inmate to

another), and messages conveyed to jail and prison visitors in order

to communicate directions and instructions to, and to discuss OC

Mexican Mafia business with, persons in other facilities and on the

streets.  OC Mexican Mafia members and associates often used coded

language to conceal the true nature of their discussions with and

instructions to criminal associates.  OC Mexican Mafia members and

associates relied on associates, often female, known as

"secretaries," to communicate with incarcerated OC Mexican Mafia

members and associates, and relay their instructions to others.

Secretaries were treated as respected criminal figures by members of street gangs controlled by and affiliated with the OC Mexican Mafia.

13.   Members of the OC Mexican Mafia and their designated subordinates, including secretaries and shot-callers, disseminated instructions to OC Mexican Mafia associates relating to the distribution of controlled substances, the collection of proceeds from the sale of controlled substances and extortions, the taxing of drug dealers, and the commission of acts of violence against persons who violated the OC Mexican Mafia's rules.

14.   From in or around 2016, and continuing to at least in or around April 2022, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop" ("MARTINEZ"), ROBERT AGUIRRE, aka "Rob" ("AGUIRRE"), and DENNIS ORTIZ, aka "Woody," aka "Socrates" ("ORTIZ"), were the OC Mexican Mafia brothers in charge of criminal activities in Orange County and within Orange County jail and prison facilities. Defendants OMAR MEJIA, aka "Cruz," aka "Rascal" ("MEJIA"), MIGUEL JOSE ALVARADO, aka "Grumpy" ("ALVARADO"), LUIS HERIBERTO VASQUEZ, aka "Moss," aka "Little Shooter," aka "Shooter" ("VASQUEZ"), MICHAEL COOPER, aka "Shaggy" ("COOPER"), and ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy" ("GUARJARDO"), held the positions of shot-callers or mouthpieces for defendants MARTINEZ, AGUIRRE, and ORTIZ. Defendant ROBERT MARTINEZ, aka "Lil Rob," aka "Blacky" ("R. MARTINEZ"), held a position on the Orange County Jail Mesa representing defendant MARTINEZ. Defendant BRENDA VANESSA CAMPOS MARTINEZ, aka "Miss V," aka "Vanessa" ("CAMPOS"), served as a secretary for defendant

MARTINEZ; defendant DANIELLE CANALES ("CANALES") served in a similar capacity for defendants MARTINEZ and COOPER.

B.   THE RACKETEERING ENTERPRISE

15.   The OC Mexican Mafia, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("OC Mexican Mafia Enterprise" or "the Enterprise").  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Enterprise operated in the Central District of California and elsewhere.

C.   PURPOSES OF THE ENTERPRISE

16.   The purposes of the OC Mexican Mafia included, but were not limited to, the following:

a.   Preserving and protecting the power, control, authority, territory, reputation, and profits of the Enterprise in and around Orange County, and within Orange County correctional facilities, through the use of intimidation, threats of violence, and violence, including assaults and murder;

b.   Enriching the leaders, members, and associates of the Enterprise through, among other things, the control of and participation in the distribution of controlled substances in and around Orange County, and within Orange County correctional

12

facilities, and the extortion of others engaged in the distribution of controlled substances and other crimes in Orange County and within Orange County correctional facilities;

c. Promoting and enhancing the Enterprise and the activities of its leaders, members, and associates, by, among other things, engaging in murder, extortion, drug trafficking, and other criminal activities;

d. Engaging in extortion and drug trafficking as a means to generate income for the Enterprise;

e. Punishing Enterprise members and associates who did not comply with the rules and orders of the Enterprise, including those who cooperated with law enforcement;

f. Keeping victims, potential victims, and community members in fear of the Enterprise through violence and threats of violence;

g. Hindering, obstructing, and preventing law enforcement officers from identifying participants in the Enterprise's criminal activities, from apprehending the perpetrators of those crimes, and from prosecuting and punishing the offenders.

D. <u>MEANS AND METHODS OF THE ENTERPRISE</u>

17. The means and methods by which members and associates of the OC Mexican Mafia conducted and participated in the conduct of the affairs of the Enterprise included, but were not limited to, the following:

13

1        a.   To generate income, members and associates of the

2 Enterprise engaged in illegal activities under the protection of the

3 Enterprise, including drug trafficking within Orange County

4 correctional facilities and in Orange County neighborhoods, taxing

5 drug dealers operating in neighborhoods controlled by the Enterprise,

6 extorting inmates by taxing in-custody criminal activity, collecting

7 respects from Hispanic street gangs under the control of the

8 Enterprise, and other criminal conduct.

9        b.   To enforce discipline within the Enterprise, members

10 and associates of the Enterprise punished errant members and

11 associates for violations of the OC Mexican Mafia's rules.

12 Discipline ranged from a fine or an assault to being placed on the

13 "green light" list, whereupon the "greenlighted" individual could be

14 murdered on behalf of the Enterprise.

15        c.   To identify persons in bad standing, coordinate the

16 movement of drugs and communications in prison, and conduct other

17 Enterprise business, members and associates of the OC Mexican Mafia

18 kept track of Southern California Hispanic gang members through lists

19 known as "roll calls," which were made to keep track of every Sureño

20 in a particular module or dorm of a jail or prison.  Such lists often

21 included the Sureño's name, booking number, next court date, gang,

22 and/or moniker.

23        d.   To facilitate and maintain control of criminal

24 activities in areas controlled by the Enterprise, both inside and

25 outside of correctional facilities, members and associates of the

26 14

27

28

1   Enterprise communicated directions, instructions, and orders to, and

2   discussed OC Mexican Mafia business with, persons in other facilities

3   or on the streets via contraband cellphones, prison system e-mails,

4   letters, "kites," "verbals," and messages conveyed to jail and prison

5   visitors.

6         e.   Members and associates of the Enterprise hid,

7   misrepresented, concealed, and caused to be hidden, misrepresented,

8   and concealed, the acts done in furtherance of the conspiracy, and

9   used coded language and other surreptitious means of communication to

10  avoid detection and apprehension by law enforcement.

11        f.   To perpetuate the Enterprise and to maintain and

12  extend their power, members and associates of the Enterprise

13  committed, attempted to commit, conspired to commit, and threatened

14  to commit acts involving murder, kidnapping, robbery, intimidation,

15  and assault against individuals who posed a threat to the Enterprise

16  or jeopardized its operations, including rival gang members,

17  Enterprise members and associates who violated the OC Mexican Mafia's

18  rules or otherwise showed disrespect to the Enterprise, and witnesses

19  to illegal activities of the Enterprise.

20        g.   To promote a climate of fear and discourage

21  cooperation with law enforcement, members and associates of the

22  Enterprise committed, attempted to commit, conspired to commit, and

23  threatened to commit acts of violence against rival gang members,

24  Hispanic gang members, Paisas, and potential witnesses to the

25  Enterprise's criminal conduct.

26                                15

27

28

E.    THE RACKETEERING CONSPIRACY

18.   Beginning in or around 2016, and continuing to at least on or about April 20, 2022, in the Central District of California, and elsewhere, defendants MARTINEZ, AGUIRRE, ORTIZ, MEJIA, ALVARADO, VASQUEZ, COOPER, GUARJARDO, R. MARTINEZ, CAMPOS, and CANALES (collectively "the Defendants"), and others known and unknown to the Grand Jury, being persons employed by, and associated with, the OC Mexican Mafia, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which consisted of:

        a.    Multiple acts involving murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

        b.    Multiple acts involving extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

        c.    Multiple acts involving robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, and 664;

        d.    Multiple offenses involving trafficking in controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and

1          e.   Multiple acts indictable under Title 18, United States

2   Code, Section 1951 (relating to interfering with commerce by robbery

3   and extortion).

4        It was further part of the conspiracy that each defendant agreed

5   that a conspirator would commit at least two acts of racketeering

6   activity in the conduct of the affairs of the enterprise.

7   F.   OVERT ACTS

8        19.  In furtherance of the conspiracy, and to achieve the object

9   thereof, the Defendants, and others known and unknown to the Grand

10  Jury, committed and caused to be committed various acts within the

11  Central District of California, and elsewhere, including, but not

12  limited to, the following:

13       Overt Act No. 1:   On an unknown date between in or around

14  August 2016 and in or around January 2017, OC Mexican Mafia

15  Enterprise associate Gregory Munoz, aka "Louie," aka "Louis," aka

16  "Snoopy," aka "Snoop" ("Munoz"), on behalf of defendant MARTINEZ,

17  directed two OC Mexican Mafia Enterprise associates known to the

18  Grand Jury to deliver extortionate "taxes" collected from three

19  individuals, totaling approximately $1500, to an unidentified female

20  in Compton, California.

21       Overt Act No. 2:   On or about January 19, 2017, immediately

22  before and after the murder of R.R., defendant MARTINEZ and OC

23  Mexican Mafia Enterprise associate Munoz spoke on the phone.

24       Overt Act No. 3:   On or about January 19, 2017, OC Mexican

25  Mafia Enterprise associate Munoz, on behalf of defendant MARTINEZ,

26                                17

27

28

ordered OC Mexican Mafia Enterprise associates Ysrael Jacob Cordova, aka "Trips," aka "Trippy" ("Cordova"), Ricardo Valenzuela, aka "Solo" ("Valenzuela"), and an OC Mexican Mafia associate known to the Grand Jury to rob R.R.

Overt Act No. 4:   On or about January 19, 2017, OC Mexican Mafia Enterprise associate Munoz directed an OC Mexican Mafia associate known to the Grand Jury to deliver extortionate "taxes" in the amount of $3,000 to an unidentified female in exchange for a bag of firearms.

Overt Act No. 5:   On or about January 19, 2017, at the direction of OC Mexican Mafia Enterprise associate Munoz, an OC Mexican Mafia associate known to the Grand Jury drove OC Mexican Mafia Enterprise associates Cordova and Valenzuela and another OC Mexican Mafia associate known to the Grand Jury to R.R.'s neighborhood to rob R.R. at gunpoint.

Overt Act No. 6:   On or about January 19, 2017, OC Mexican Mafia Enterprise associates Cordova and Valenzuela and an OC Mexican Mafia associate known to the Grand Jury, armed with firearms, shot and killed R.R.

Overt Act No. 7:   On or about January 19, 2017, an OC Mexican Mafia associate known to the Grand Jury drove OC Mexican Mafia Enterprise associates Cordova and Valenzuela and another OC Mexican Mafia associate known to the Grand Jury away from the R.R. murder scene.

18

Overt Act No. 8:   On or about March 28, 2017, defendant MARTINEZ ordered that OC Mexican Mafia Enterprise member Munoz be removed from his position as a shot-caller with the OC Mexican Mafia Enterprise.

Overt Act No. 9:   On or about March 28, 2017, as a result of defendant MARTINEZ's order, OC Mexican Mafia Enterprise associates known to the Grand Jury assaulted OC Mexican Mafia Enterprise member Munoz while he was in custody in Calipatria State Prison, causing bodily injury to Munoz.

Overt Act No. 10:   On or about April 6, 2017, OC Mexican Mafia Enterprise associates known to the Grand Jury used handmade weapons to assault OC Mexican Mafia Enterprise member Munoz while he was in custody in Calipatria State Prison, causing serious bodily injury to Munoz's head and ear.   This assault occurred as a result of defendant MARTINEZ's order to remove Munoz as a shot-caller with the OC Mexican Mafia Enterprise.

Overt Act No. 11:   Between on or about April 17, 2017 through on or about April 25, 2017, defendants MARTINEZ and GUARJARDO, and others known to the Grand Jury, discussed and agreed to sell approximately three ounces of heroin for $2,000.

Overt Act No. 12:   On or about April 17, 2017, defendant GUARJARDO contacted a person he believed to be a methamphetamine buyer, but who was in fact a confidential informant working with law enforcement ("CI-1"), to set up a sale of three ounces of heroin for $2,000.

19

Overt Act No. 13:   On or about April 18, 2017, in a series of telephone calls, defendant GUARJARDO advised CI-1 that defendant MARTINEZ was setting up the heroin deal, confirmed that it would cost $2,000 for three ounces of heroin, and discussed how much CI-1 would need to pay in "tax" from the drug sale to defendants MARTINEZ and AGUIRRE.

Overt Act No. 14:   On or about April 21, 2017, defendant GUARJARDO contacted CI-1 to advise that defendant MARTINEZ texted that the heroin deal would proceed.  Several minutes later, CI-1 received a telephone call from OC Mexican Mafia Enterprise associate Lorraine Robles ("Robles") to arrange a meeting location for the heroin deal.

Overt Act No. 15:   On or about April 21, 2017, OC Mexican Mafia Enterprise associate Robles, acting on behalf of an individual known to the Grand Jury, sold approximately 46.6 grams of a mixture and substance containing a detectable amount of heroin to CI-1 in exchange for $1,400.

Overt Act No. 16:   During the heroin deal on April 21, 2017, defendant GUARJARDO spoke with OC Mexican Mafia Enterprise associate Robles via telephone to advise that defendant MARTINEZ had arranged for three ounces of heroin, not two.

Overt Act No. 17:   Between on or about April 21, 2017 through on or about May 13, 2017, defendants MARTINEZ, GUARJARDO, and CAMPOS, and others known to the Grand Jury, attempted to extort $800 in the form of "respects" and "taxes" from CI-1, whom the defendants

20

believed to be a buyer and distributor of narcotics.  In exchange for the payment, CI-1 received protection from defendant MARTINEZ and was allowed to continue selling drugs in the area controlled by defendant MARTINEZ.

Overt Act No. 18:   On or about April 24, 2017, defendant GUARJARDO instructed CI-1 to provide $700 in "respects" to defendants MARTINEZ and AGUIRRE through defendant CAMPOS for the two ounces of heroin CI-1 purchased on April 21, 2017; defendant GUARJARDO confirmed that defendant MARTINEZ set the amount.

Overt Act No. 19:   Between on or about April 24, 2017 and on or about May 25, 2017, defendants MARTINEZ and GUARJARDO, and others known to the Grand Jury, discussed and agreed to sell approximately four ounces of heroin and two ounces of methamphetamine.

Overt Act No. 20:   On or about April, 24, 2017, defendant GUARJARDO provided CI-1 with the contact information for OC Mexican Mafia Enterprise associate Natividad Galvan, aka "Naty" ("N. Galvan"), and advised that defendant MARTINEZ confirmed N. Galvan would sell CI-1 "ounces" for $600.

Overt Act No. 21:   On or about April 25, 2017, OC Mexican Mafia Enterprise associate Robles sold approximately 50.06 grams of a mixture and substance containing a detectable amount of heroin for $1,300 to CI-1.

Overt Act No. 22:   Between on or about April 27, 2017 and on or about April 28, 2017, defendants MARTINEZ, GUARJARDO, and CAMPOS extorted $400 from CI-1 as "respects" or a tax imposed on CI-1 for

21

money received from the sale of the drugs CI-1 purchased from associates of defendant MARTINEZ.

Overt Act No. 23:   On or about May 3, 2017, OC Mexican Mafia Enterprise associate N. Galvan sold approximately 54.5 grams of methamphetamine for $500 to CI-1, whom N. Galvan believed to be a buyer and distributor of narcotics.

Overt Act No. 24:   On or about May 13, 2017, in a recorded telephone call, defendant MARTINEZ and CI-1 discussed the price and quality of narcotics CI-1 received from OC Mexican Mafia Enterprise associate N. Galvan.

Overt Act No. 25:   On or about May 19, 2017, OC Mexican Mafia Enterprise associate N. Galvan sold approximately 21 grams of a mixture and substance containing a detectable amount of heroin and 28.14 grams of methamphetamine for $950 to CI-1.

Overt Act No. 26:   On or about May 25, 2017, OC Mexican Mafia Enterprise associate N. Galvan sold approximately 24.6 grams of a mixture and substance containing a detectable amount of heroin and 27.44 grams of methamphetamine for $900 to CI-1.

Overt Act No. 27:   On or about May 31, 2017, in a series of text messages and phone calls, defendant GUARJARDO advised CI-1 that defendant MARTINEZ wanted CI-1 to obtain CI-1's narcotics from OC Mexican Mafia Enterprise associate Lorenzo Galvan, aka "Lalo" ("L. Galvan"), and that the price for methamphetamine would be $200 per ounce.

Overt Act No. 28:   On or about June 2, 2017, in a series of text messages, defendant GUARJARDO advised CI-1 that defendant MARTINEZ had arranged for CI-1 to obtain heroin and methamphetamine the next day and confirmed that the price would be $400 for two ounces of methamphetamine and $650 for one ounce of heroin.

Overt Act No. 29:   On or about June 6, 2017, OC Mexican Mafia Enterprise associate L. Galvan sold approximately 57 grams of methamphetamine and approximately 24.6 grams of a mixture and substance containing a detectable amount of heroin for $1,050 to CI-1, who L. Galvan believed to be a buyer and distributor of narcotics.

Overt Act No. 30:   Between on or about June 6, 2017 and on or about September 27, 2017, defendants MARTINEZ and GUARJARDO, and others known to the Grand Jury, including OC Mexican Mafia Enterprise associate L. Galvan, discussed and agreed to sell approximately two ounces of heroin and three ounces of methamphetamine.

Overt Act No. 31:   On or about June 30, 2017, OC Mexican Mafia Enterprise associate L. Galvan sold approximately 26.2 grams of methamphetamine and approximately 24.2 grams of a mixture and substance containing a detectable amount of heroin for $900 to CI-1.

Overt Act No. 32:   Between on or about July 17, 2017, and on or about July 28, 2017, defendant CANALES conspired with defendant MARTINEZ to collect an extortion payment in the amount of $200 from a person they believed to be a buyer and distributor of narcotics, but

23

who was actually a confidential informant working with law
enforcement ("CI-2").

Overt Act No. 33:   Between on or about July 18, 2017 and on or
about July 26, 2017, defendants MARTINEZ and CANALES, and others
known to the Grand Jury, discussed and agreed to sell approximately
34 grams of heroin for $1,000.

Overt Act No. 34:   On or about July 18, 2017, defendants
MARTINEZ and CANALES discussed and agreed to collect an extortion
payment in the amount of $200 a month in exchange for selling heroin
from CI-2.  In exchange for the payment, CI-2 received protection
from defendant MARTINEZ and was allowed to continue selling drugs in
the area controlled by defendant MARTINEZ.

Overt Act No. 35:   On or about July 25, 2017, defendant CANALES
advised CI-2 that CI-2 worked under defendant MARTINEZ and was not
required to make extortionate payments to other members of the OC
Mexican Mafia Enterprise.

Overt Act No. 36:   Between on or about July 25, 2017 and on or
about July 26, 2017, defendant CANALES sold approximately 34.6 grams
of a mixture and substance containing a detectable amount of heroin
for $1,000 to CI-2.

Overt Act No. 37:   Between on or about July 25, 2017 through on
or about July 26, 2017, defendants MARTINEZ and CANALES collected an
extortion payment in the amount of $200 from CI-2.

Overt Act No. 38:   In or around August 2017, defendant CANALES,
acting on behalf of an individual known to the Grand Jury,

24

transferred narcotics to a member of the OC Mexican Mafia Enterprise to be given to defendants MARTINEZ and MEJIA.

Overt Act No. 39:   On or about August 5, 2017, defendants MARTINEZ, MEJIA, and R. MARTINEZ, along with others known to the Grand Jury, conspired to kill OC Mexican Mafia Enterprise associate Munoz.

Overt Act No. 40:   On or about August 5, 2017, defendant R. MARTINEZ and OC Mexican Mafia Enterprise associate Frank Mosqueda, aka "Demon," aka "Pride" ("Mosqueda"), armed with at least one firearm, attacked OC Mexican Mafia Enterprise associate Munoz while on the street, with the intent to kill him.

Overt Act No. 41:   On or about August 5, 2017, OC Mexican Mafia Enterprise associate Mosqueda shot OC Mexican Mafia Enterprise associate Munoz multiple times in the back, causing significant injury to Munoz.   The attempted murder occurred as a result of defendant MARTINEZ's order to remove Munoz as a shot-caller with the OC Mexican Mafia Enterprise.

Overt Act No. 42:   On or about August 17, 2017, OC Mexican Mafia Enterprise associate L. Galvan sold approximately 25.4 grams of a mixture and substance containing a detectable amount of heroin for $700 to CI-1.

Overt Act No. 43:   On or about August 20, 2017, defendants MARTINEZ and MEJIA discussed and planned to murder R.V. for stealing money and drugs that belonged to defendant MARTINEZ.

1    <u>Overt Act No. 44:</u>   On or about August 20, 2017, defendant

2    MARTINEZ ordered OC Mexican Mafia Enterprise associates to murder

3    R.V. for stealing money and drugs from defendant MARTINEZ.

4    <u>Overt Act No. 45:</u>   On or about August 21, 2017, OC Mexican

5    Mafia Enterprise associates Kevin Trejo, aka "Minor" ("Trejo"), James

6    Mendez, aka "Lil Buck," aka "Buck" ("Mendez"), and Mike Escobar, aka

7    "Risky" ("Escobar"), while armed with at least one firearm, lured

8    R.V. into a vehicle being driven by Escobar, with the intent to kill

9    R.V. for failing to pay a drug debt to defendant MARTINEZ.

10   <u>Overt Act No. 46:</u>   On or about August 21, 2017, OC Mexican

11   Mafia Enterprise associate Mendez, Trejo, and Escobar killed R.V. for

12   stealing money and drugs from defendant MARTINEZ.

13   <u>Overt Act No. 47:</u>   On or about September 18, 2017, defendants

14   VASQUEZ and COOPER discussed and agreed to collect extortion

15   payments.

16   <u>Overt Act No. 48:</u>   On or about September 20, 2017, defendants

17   VASQUEZ and COOPER discussed and agreed to distribute four ounces of

18   methamphetamine.

19   <u>Overt Act No. 49:</u>   On or about September 21, 2017, defendants

20   MARTINEZ and COOPER discussed and agreed to collect $500 from a local

21   drug dealer to clear a $1,200 debt owed to defendant MARTINEZ.

22   <u>Overt Act No. 50:</u>   On or about September 21, 2017, defendants

23   VASQUEZ and COOPER discussed and agreed to distribute one pound of

24   heroin.

25

26                                    26

27

28

Overt Act No. 51:   Between on or about September 22, 2017 and on or about September 23, 2017, defendants MARTINEZ, MEJIA, VASQUEZ, and COOPER learned that the owner of a tire shop located in Placentia, CA ("the Tire Shop"), was selling drugs out of the business and not paying respects to defendant MARTINEZ.

Overt Act No. 52:   Between on or about September 22, 2017 and on or about September 23, 2017, defendant MARTINEZ ordered defendants MEJIA, VASQUEZ, and COOPER to demand $1,000 from the owner of the Tire Shop for dealing drugs in the territory without defendant MARTINEZ's knowledge or permission.

Overt Act No. 53:   Between on or about September 22, 2017 and on or about September 23, 2017, defendant MEJIA ordered a member of the Darkside street gang to go with defendant VASQUEZ to the Tire Shop, confront the owner, and demand the payment of respects.

Overt Act No. 54:   Between on or about September 23, 2017 and on or about September 24, 2017, defendants MARTINEZ, MEJIA, VASQUEZ, and COOPER discussed and agreed to return to the Tire Shop and confront the owner again for failing to pay the extortionate sum demanded.

Overt Act No. 55:   On or about September 23, 2017, defendants MARTINEZ and COOPER, acting on behalf of defendant AGUIRRE, discussed and agreed to collect $200 from a Hispanic street gang under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 56:   On or about September 23, 2017, defendants MARTINEZ and COOPER discussed and agreed to collect $250 from a

27

Hispanic street gang under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 57:  On or about September 25, 2017, defendant MARTINEZ and an OC Mexican Mafia Enterprise associate from West Myrtle, a Hispanic street gang located in Santa Ana, CA, discussed and arranged to collect extortion payments from a marijuana dispensary in exchange for protection from the OC Mexican Mafia Enterprise.

Overt Act No. 58:  On or about September 25, 2017, defendants MARTINEZ and ORTIZ, and OC Mexican Mafia Enterprise associates from the West Myrtle gang, discussed and planned the collection of extortion payments from a marijuana dispensary in Paramount, CA, in exchange for protection from the OC Mexican Mafia Enterprise.

Overt Act No. 59:  On or about September 27, 2017, defendants COOPER and CANALES conspired to assault a person unknown to the Grand Jury.

Overt Act No. 60:  On or about September 28, 2017, defendants MARTINEZ and ORTIZ, and another OC Mexican Mafia Enterprise member known to the Grand Jury, discussed and agreed to extort Hispanic street gangs in Santa Ana, CA.

Overt Act No. 61:  On or about September 28, 2017, defendants VASQUEZ and COOPER discussed the collection proceeds from the sale of one ounce of narcotics.

Overt Act No. 62:  On or about September 28, 2017, defendant CAMPOS met with OC Mexican Mafia Enterprise associate L. Galvan, who

sold drugs for defendant MARTINEZ, and collected a $900 drug debt.
After L. Galvan gave the money to defendant CAMPOS, L. Galvan texted
defendant MARTINEZ and informed defendant MARTINEZ that L. Galvan
provided the money to defendant CAMPOS and acknowledged that he still
owed defendant MARTINEZ $400.

Overt Act No. 63:   On or about September 29, 2017, defendants
MARTINEZ and COOPER discussed and agreed to collect $200 from a
Hispanic street gang under the control of the OC Mexican Mafia
Enterprise.

Overt Act No. 64:   On or about September 30, 2017, defendants
VASQUEZ and COOPER discussed and agreed to collect an extortion
payment.

Overt Act No. 65:   On or about September 30, 2017, defendants
COOPER and CANALES, acting on behalf of defendant MARTINEZ, discussed
and agreed to collect extortion payments in the amount of $200 a week
from a person known to the Grand Jury.

Overt Act No. 66:   On or about October 1, 2017, defendants
VASQUEZ and COOPER discussed and agreed to bring one ounce of
narcotics into the jails.

Overt Act No. 67:   On or about October 1, 2017, defendant
COOPER texted defendant MARTINEZ requesting permission to impose
violence as a penalty on members of the Orange County Criminals
Hispanic street gang under the control of the OC Mexican Mafia
Enterprise for one member's failure to pay money owed to defendant
MARTINEZ from a narcotics transaction and the street gang's failure

to pay respects to the OC Mexican Mafia Enterprise for the prior two months.

Overt Act No. 68:   On or about October 1, 2017, defendant CANALES texted defendant COOPER that she would be adding money to defendant COOPER's Green Dot cards.

Overt Act No. 69:   On or about October 2, 2017, defendants MARTINEZ and COOPER discussed and agreed to collect an extortion payment in the amount of $650 from a Hispanic street gang in Fullerton, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 70:   On or about October 2, 2017, defendants COOPER and CANALES discussed and agreed to sell a quantity of heroin to an individual known to the Grand Jury.

Overt Act No. 71:   On or about October 3, 2017, defendants MARTINEZ and COOPER discussed and agreed to bring narcotics into the jails.

Overt Act No. 72:   On or about October 5, 2017, defendants COOPER and CANALES discussed and agreed that defendant CANALES would transport an individual working with the OC Mexican Mafia Enterprise to collect extortionate taxes from suspected narcotics distributors on behalf of defendant MARTINEZ.

Overt Act No. 73:   On or about October 5, 2017, defendants VASQUEZ and COOPER discussed and agreed to sell one ounce of heroin in exchange for $600.

Overt Act No. 74:   On or about October 6, 2017, defendants COOPER and CANALES discussed and agreed to collect an extortion payment from an individual known to the Grand Jury.

Overt Act No. 75:   On or about October 7, 2017, defendant COOPER and a member of a Hispanic street gang under the control of defendant MARTINEZ discussed and agreed to distribute one ounce of methamphetamine for $170.

Overt Act No. 76:   On or about October 7, 2017, defendants VASQUEZ and COOPER discussed and agreed to distribute one pound of methamphetamine for $1,800.

Overt Act No. 77:   Between on or about October 7, 2017 through on or about October 9, 2017, defendants MARTINEZ, MEJIA, and COOPER discussed and agreed to enforce assaults on the Orange County Criminals, a Hispanic street gang from Orange, CA, under the control of the OC Mexican Mafia Enterprise, and to impose a monetary fine on the gang as punishment for one member's misconduct.

Overt Act No. 78:   Between on or about October 7, 2017 through on or about October 10, 2017, defendants COOPER and CANALES discussed and agreed to collect an extortion payment in the amount of $700 from an individual known to the Grand Jury.

Overt Act No. 79:   Between on or about October 8, 2017 through on or about October 10, 2017, defendants VASQUEZ and COOPER discussed and agreed to enforce an assault on a member of the Orange County Criminals street gang under the control of defendant MARTINEZ who failed to follow an order and to impose a $600 monetary fine on the

31

Orange County Criminals due to that member's failure to follow the order.

Overt Act No. 80:   On or about October 9, 2017, defendants VASQUEZ and COOPER discussed and agreed to prepare heroin for sale.

Overt Act No. 81:   On or about October 9, 2017, defendant COOPER instructed defendant CANALES to contact an individual known to the Grand Jury who was responsible for collecting extortion payments for defendant COOPER.

Overt Act No. 82:   On or about October 12, 2017, defendants VASQUEZ and COOPER discussed and agreed to purchase suboxone strips to bring into the jails.

Overt Act No. 83:   On or about October 12, 2017, defendants MARTINEZ and COOPER, acting on behalf of defendant AGUIRRE, discussed and agreed to collect extortion payments from Crow Village, La Colonia, and Big Stanton, Hispanic street gangs located in Garden Grove, Anaheim, and Stanton, CA, and all under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 84:   On or about October 12, 2017, defendants MARTINEZ and COOPER discussed and agreed to distribute narcotics for $50 to $75 per gram.

Overt Act No. 85:   On or about October 13, 2017, defendant COOPER, acting on behalf of defendants MARTINEZ and AGUIRRE, discussed and agreed with defendant VASQUEZ to collect $400 from Anaheim La Colonia, a Hispanic street gang located in Anaheim, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 86:   On or about October 13, 2017, defendant COOPER, acting on behalf of defendant AGUIRRE, discussed and agreed with defendant VASQUEZ to collect $200 from Crow Village, a Hispanic street gang located in Stanton, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 87:   On or about October 13, 2017, defendant COOPER discussed and agreed with defendant VASQUEZ to collect $200 from Orange Varrio Cypress, a Hispanic street gang located in Orange, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 88:   On or about October 13, 2017, defendant VASQUEZ extorted $200 from Anaheim Vatos Locos, a Hispanic street gang located in Anaheim, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 89:   Between in or around October 2017 and in or around January 2018, defendants AGUIRRE, MEJIA, and ALVARADO, along with OC Mexican Mafia Enterprise associates known to the Grand Jury, discussed and agreed to assault and kill J.L. for taking narcotics and money from a woman associated with the OC Mexican Mafia Enterprise.

Overt Act No. 90:   On or about October 24, 2017, OC Mexican Mafia Enterprise associates known to the Grand Jury, under the authority of defendant AGUIRRE's greenlight against J.L., assaulted and beat J.L.

Overt Act No. 91:   On or about October 24, 2017, an OC Mexican Mafia Enterprise associate known to the Grand Jury, while armed with

33

a firearm, approached J.L. with the intent to effectuate defendant AGUIRRE's greenlight order against him.

Overt Act No. 92:   On or about October 24, 2017, an OC Mexican Mafia Enterprise associate known to the Grand Jury, acting on defendant AGUIRRE's greenlight order, shot at J.L. as he attempted to run away from OC Mexican Mafia Enterprise associates known to the Grand Jury.  J.L. was not hit with the bullet.

Overt Act No. 93:   On or about October 27, 2017, defendants MARTINEZ and MEJIA discussed and agreed to extort $1,000 from J.M., a member of Monos, a Hispanic street gang located in La Habra, CA, under the control of the OC Mexican Mafia Enterprise, for failing to follow an order issued by defendant AGUIRRE.  The money collected was to be divided evenly between defendants MARTINEZ and AGUIRRE.

Overt Act No. 94:   On or about October 27, 2017, defendant MEJIA, acting on behalf of defendant AGUIRRE, ordered the assault of J.M., a member of the Monos gang, for failing to follow an order from defendant AGUIRRE.

Overt Act No. 95:   On or about October 27, 2017, defendant ALVARADO ordered the assault of J.M., a member of the Monos gang.

Overt Act No. 96:   On or about October 28, 2017, defendant ALVARADO discussed and agreed with an OC Mexican Mafia Enterprise associate known to the Grand Jury, and others known and unknown to the Grand Jury, to assault D.D. while in custody.

Overt Act No. 97:   On or about October 28, 2017, defendant ALVARADO and an OC Mexican Mafia Enterprise associate known to the

34

Grand Jury discussed and agreed to assault D.D. while in custody. D.D. was alleged to have been causing problems on the street under the authority of defendant AGUIRRE's name.

Overt Act No. 98:   On or about October 29, 2017, defendants MEJIA and COOPER discussed and agreed to return narcotics to an OC Mexican Mafia member in Los Angeles that had been given to a Mesa member for defendant MARTINEZ.

Overt Act No. 99:   On or about October 30, 2017, defendants MARTINEZ, MEJIA, VASQUEZ, and COOPER, along with others known to the Grand Jury, using contraband cellphones, discussed inflicting violence on various members of Southside Santa Ana, Highland Street, and Southside Huntington Beach, all Hispanic Street gangs located in the Orange County area, for their allegiance to an individual who had fallen out of favor with the OC Mexican Mafia Enterprise.

Overt Act No. 100:   On or about October 31, 2017, defendant MARTINEZ advised defendant ORTIZ via text message that defendant MARTINEZ had given a gram of methamphetamine to an OC Mexican Mafia Enterprise associate to sell for defendant ORTIZ inside Salinas Valley State Prison.  Defendant ORTIZ responded and acknowledged the information.

Overt Act No. 101:   On or about October 31, 2017, via text messages on contraband cellphones, defendants MARTINEZ and ORTIZ discussed locating a Hispanic gang member from Southgate, CA, who owed the OC Mexican Mafia Enterprise a significant amount of money.

1      Overt Act No. 102:  On or about October 31, 2017, via text
2  messages on contraband cellphones, defendants MARTINEZ and ORTIZ
3  discussed inflicting violence on a Hispanic gang member from
4  Southgate, CA, if he did not pay monies owed to the OC Mexican Mafia
5  Enterprise.
6      Overt Act No. 103:  On or about November 1, 2017, defendant
7  MARTINEZ informed defendant ORTIZ via text message that defendant
8  MARTINEZ was collecting money to give to defendant ORTIZ.
9      Overt Act No. 104:  On or about November 1, 2017, defendant
10 CAMPOS met with defendant VASQUEZ and collected $1,625 from defendant
11 VASQUEZ.  Defendant VASQUEZ had previously collected the money from
12 local Orange County street gangs that were required to pay respects
13 to defendant MARTINEZ.  During the meeting, defendant MARTINEZ
14 participated in the collection of the money via cellular telephone.
15     Overt Act No. 105:  On or about November 3, 2017, defendants
16 MARTINEZ, AGUIRRE, and ORTIZ, as well as another Mexican Mafia
17 brother from San Diego, discussed via contraband cellphones
18 inflicting violence on Mexican Mafia associates who speak
19 derogatorily or negatively against a Mexican Mafia brother.
20     Overt Act No. 106:  On or about November 3, 2017, defendants
21 MARTINEZ, AGUIRRE, and ORTIZ, as well as two other Mexican Mafia
22 brothers, discussed the logistics of disseminating narcotics to
23 various correctional facilities controlled by Mexican Mafia members,
24 including  five to six grams of heroin to the Mesa on the A yard of a
25 California state prison.
26                                    36
27
28

Overt Act No. 107:  On or about November 4, 2017, defendant ALVARADO, acting on behalf of defendant AGUIRRE, arranged the collection of an extortion payment from All West Coast, a Hispanic street gang located in La Habra, CA, under the control of the OC Mexican Mafia Enterprise.

Overt Act No. 108:  On or about November 4, 2017, defendants AGUIRRE and ALVARADO discussed and agreed to assault J.M., a member of the Monos gang, for failing to follow an order issued by defendant AGUIRRE.

Overt Act No. 109:  On or about November 4, 2017, defendant ALVARADO issued an order to members of the Monos gang on behalf of defendant AGUIRRE to assault J.M. on sight.

Overt Act No. 110:  On or about November 4, 2017, defendant ALVARADO instructed an OC Mexican Mafia Enterprise associate to let others know that anyone who goes against defendant AGUIRRE is to be assaulted.

Overt Act No. 111:  On or about November 8, 2017, defendants MARTINEZ and ORTIZ discussed and arranged to have contraband cellphones brought into Salinas Valley State Prison to be delivered to an OC Mexican Mafia Enterprise associate from Oceano 13, a Hispanic street gang from Oceano, CA.

Overt Act No. 112:  On or about November 12, 2017, defendants MARTINEZ and ORTIZ discussed and arranged to have contraband cellphones brought into Salinas Valley State Prison to be sold for at

least $1,000 per phone, the proceeds of which were to benefit the OC
Mexican Mafia Enterprise.

Overt Act No. 113:  Between on or about November 16, 2017 and on
or about November 17, 2017, defendants MARTINEZ and CAMPOS, along
with an OC Mexican Mafia Enterprise associate known to the Grand
Jury, discussed and agreed to collect an extortion payment from Baker
Street, a Hispanic street gang located in Fullerton, CA, under the
control of the OC Mexican Mafia Enterprise.

Overt Act No. 114:  On or about November 17, 2017, defendants
MARTINEZ and CAMPOS, along with an OC Mexican Mafia Enterprise
associate known to the Grand Jury, collected a $100 extortion payment
from the Baker Street gang.

Overt Act No. 115:  On or about November 18, 2017, defendant
MARTINEZ advised defendant ORTIZ via text message that defendant
MARTINEZ would be sending "a few grams" of narcotics to defendant
ORTIZ, utilizing OC Mexican Mafia Enterprise associates to smuggle
the drugs into Salinas Valley State Prison.

Overt Act No. 116:  On or about November 19, 2017, defendant
MARTINEZ informed defendant ORTIZ via text message that defendant
MARTINEZ was collecting an extortion payment on behalf of defendant
ORTIZ from Lopers, a Hispanic street gang from Santa Ana, CA, and
that the extortion payment would be given to defendant ORTIZ's wife
to deliver to defendant ORTIZ during visitation the following
weekend.  Defendant ORTIZ acknowledged defendant MARTINEZ's text
message.

Overt Act No. 117:  On or about December 1, 2017, at the directions of defendants MEJIA, ALVARADO, and COOPER, OC Mexican Mafia Enterprise associates known to the Grand Jury assaulted D.D. with a sharp object, while D.D. was incarcerated at the Theo Lacey Correctional Facility, causing injuries to D.D.'s scalp, neck, and face.

Overt Act No. 118:  On or about December 12, 2017, defendant ORTIZ ordered that E.O. be killed for warning other gang members of violations that were pending against them.

Overt Act No. 119:  On or about December 12, 2017, OC Mexican Mafia Enterprise associates known to the Grand Jury, armed with a metal rod with a sharpened point and a flat metal object sharpened to a point, attempted to kill E.O., causing serious injuries to his body and head.  The attempted murder occurred as a result of defendant ORTIZ's order to kill E.O. for warning other gang members of violations that were pending against them.

Overt Act No. 120:  On or about December 13, 2017, defendants MARTINEZ and MEJIA, and OC Mexican Mafia Enterprise associate Andres Alba, aka "Doctor," aka "Dre" ("Alba"), discussed and agreed to extort $300 and two firearms, a .32 caliber handgun and a .40 caliber handgun, from J.A., a representative from Boys from the Hood, a Hispanic street gang located in Anaheim, CA, as payment of respects to defendant MARTINEZ.

Overt Act No. 121:  On or about December 13, 2017, OC Mexican Mafia Enterprise associate Alba collected $166 and a .32 caliber

39

Ruger revolver from J.A. as payment of respects to defendants MARTINEZ and MEJIA.

Overt Act No. 122:  On or about December 15, 2017, defendants AGUIRRE and MEJIA discussed and agreed to kill J.L. for taking narcotics and money from a woman associated with the OC Mexican Mafia Enterprise.

Overt Act No. 123:  On or about December 15, 2017, defendants AGUIRRE and MEJIA and an OC Mexican Mafia Enterprise associate known to the Grand Jury discussed and agreed to kill J.L. for taking narcotics and money from a woman associated with the OC Mexican Mafia Enterprise.

Overt Act No. 124:  On or about December 17, 2017, defendant ORTIZ advised defendant MARTINEZ that defendant ORTIZ had ordered the murder of E.O. for warning other gang members of violations that were pending against them.  Defendant MARTINEZ agreed with defendant ORTIZ that the order was appropriate.

Overt Act No. 125:  On or about December 18, 2017, defendants AGUIRRE, MEJIA, and ALVARADO discussed and agreed to kill J.L. for taking narcotics and money from a woman associated with the OC Mexican Mafia Enterprise.

Overt Act No. 126:  On or about December 19, 2017, defendant MARTINEZ informed defendant ORTIZ via text message that defendant MARTINEZ was collecting an extortion payment from the Lopers gang on behalf of defendant ORTIZ.  Defendant ORTIZ acknowledged that he would be receiving the money.

40

Overt Act No. 127:  On or about December 19, 2017, defendant
CAMPOS collected an extortion payment on behalf of defendant ORTIZ
and arranged to deliver the money to defendant ORTIZ's wife to give
to defendant ORTIZ.  Defendant ORTIZ acknowledged via text message to
defendant MARTINEZ that he would be receiving the money from his
wife.

Overt Act No. 128:  On or about December 24, 2017, defendant
MARTINEZ ordered defendant MEJIA to kill R.M. for bothering a female
associate of defendant MARTINEZ.

Overt Act No. 129:  On or about December 25, 2017, defendant
MEJIA and OC Mexican Mafia Enterprise associate Alex Gonzalez, aka
"Hitman," aka "Hector" ("Gonzalez"), discussed and agreed to murder
R.M.

Overt Act No. 130:  On or about December 25, 2017, OC Mexican
Mafia Enterprise associates Gonzalez and Jonathan Martinez, aka
"Fabian," aka "Peanut" ("J. Martinez"), discussed and agreed to
murder R.M.

Overt Act No. 131:  On or about December 25, 2017, OC Mexican
Mafia Enterprise associates Gonzalez and J. Martinez possessed loaded
firearms during an attempt to murder R.M. on behalf of defendants
MARTINEZ and MEJIA.

Overt Act No. 132:  On or about December 25, 2017, defendants
MARTINEZ and MEJIA discussed and agreed with OC Mexican Mafia
Enterprise associate Gonzalez to seriously assault R.M.

41

Overt Act No. 133:  On or about December 25, 2017, defendant MEJIA and OC Mexican Mafia Enterprise associate Orlando Arballo, aka "KO," aka "Knock Out" ("Arballo"), discussed and agreed to assault and extort $500 from R.M.

Overt Act No. 134:  On or about December 25, 2017, defendant MEJIA discussed and agreed with OC Mexican Mafia Enterprise associates Arballo and Megan Moreno ("Moreno") to assault R.M. and kill anyone who attempted to stop the attack on R.M.

Overt Act No. 135:  On or about December 25, 2017, OC Mexican Mafia Enterprise associates Roberto Zayas, aka "Midnight" ("Zayas"), Saul Herrera, aka "Sinner" ("Herrera"), Mark Cooper, aka "Reckless" ("M. Cooper"), and Moreno discussed and agreed to assault or kill R.M. on behalf of defendants MARTINEZ and MEJIA.

Overt Act No. 136:  On or about December 25, 2017, OC Mexican Mafia Enterprise associate Arballo, while armed with a firearm, attempted to assault and kill R.M.

Overt Act No. 137:  On or about December 28, 2017, defendants AGUIRRE and MEJIA discussed and agreed to kill defendant COOPER.

Overt Act No. 138:  Between on or about December 29, 2017 and on or about January 1, 2018, defendants MARTINEZ and MEJIA discussed via the Signal messaging app killing defendant COOPER and agreed to do so.

Overt Act No. 139:  On or about January 2, 2018, defendant AGUIRRE ordered defendant MEJIA to instruct OC Mexican Mafia

42

Enterprise associates in the Orange County Jail to find J.L. and kill him if he arrived at the Orange County Jail.

Overt Act No. 140:  On or about January 5, 2018, defendants MARTINEZ and MEJIA discussed and agreed to kill defendant COOPER for ordering a greenlight on an OC Mexican Mafia Enterprise associate under defendant AGUIRRE that was not sanctioned by defendant MARTINEZ and for being suspected of causing a police raid against OC Mexican Mafia Enterprise members.

Overt Act No. 141:  On or about January 5, 2018, defendant MEJIA, acting on behalf of defendant MARTINEZ, ordered OC Mexican Mafia Enterprise associates known to the Grand Jury to kill defendant COOPER who was in custody at Calipatria State Prison.

Overt Act No. 142:  On or about January 5, 2018, OC Mexican Mafia Enterprise associates known to the Grand Jury stabbed defendant COOPER multiple times with metal objects with sharp points in the head and back area. Defendant COOPER suffered serious bodily injuries to his head and back.

Overt Act No. 143:  On or about January 8, 2018, defendants AGUIRRE, MEJIA, and ALVARADO discussed and affirmed the continuation of a greenlight to kill J.L. for taking narcotics and money from a woman associated with the OC Mexican Mafia Enterprise.

Overt Act No. 144:  On or about January 10, 2018, defendant MEJIA instructed OC Mexican Mafia Enterprise associate Arballo to assault an individual for failing to follow orders. Arballo assaulted the individual while on the phone with defendant MEJIA.

43

Overt Act No. 145:  On or about February 15, 2019, defendant CAMPOS possessed calendar planners for July 2016-June 2017 and July 2017-June 2018 containing ledgers of extortion collections; payment receipts to defendant MARTINEZ's jail accounts; lists that outlined which Hispanic street gangs fell under defendants MARTINEZ and AGUIRRE and a third unidentified individual; and approximately $12,748.

Overt Act No. 146:  On or about December 31, 2019, defendant R. MARTINEZ, along with OC Mexican Mafia Enterprise associates Robert Amezcua, aka "Flaco," and Mher Darbinyan, aka "Hollywood Mike," acting under the authority of defendant MARTINEZ's greenlight against defendant COOPER, attempted to kill defendant COOPER by stabbing him in the face and neck area with a metal object with a sharp edge.

Overt Act No. 147:  On or about July 29, 2020, defendant MARTINEZ ordered OC Mexican Mafia Enterprise associates in the Orange County Jail, Theo Lacy Facility, to kill F.B. for threatening to discuss the Mexican Mafia with law enforcement.

Overt Act No. 148:  On or about July 29, 2020, OC Mexican Mafia Enterprise associates known to the Grand Jury attempted to kill F.B. per defendant MARTINEZ's order.  F.B.'s throat was slit and he was repeatedly kicked and stomped, causing serious bodily injuries to his face, head, throat, and body.

NOTICE OF SPECIAL SENTENCING FACTORS

1.   Between in or around 2016, and continuing through on or about April 20, 2022, within the Central District of California, and

44

elsewhere, defendants MARTINEZ, VASQUEZ, COOPER, GUARJARDO, and CAMPOS, and others known and unknown to the Grand Jury, conspired to knowingly and intentionally distribute, and possess with intent to distribute, at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, and at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

2.   On or about January 19, 2017, within the Central District of California, and elsewhere, defendants MARTINEZ and MUNOZ, together with others, murdered with malice aforethought R.R., which murder was committed during the perpetration of, and attempt to perpetrate, a robbery, in violation of California Penal Code Sections 31, 187, and 189.

3.   Between on or about March 28, 2017, through August 5, 2017, within the Central District of California, and elsewhere, defendants MARTINEZ, MEJIA, and R. MARTINEZ, together with others, conspired to murder G.M. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

4.   On or about August 21, 2017, within the Central District of California, and elsewhere, defendant MARTINEZ, together with others, murdered with malice aforethought R.V., and which murder was committed willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 31, 187, and 189.

45

5.   Between on or about October 24, 2017, through January 8, 2018, within the Central District of California, and elsewhere, defendants AGUIRRE, ALVARADO, and MEJIA, together with others, conspired to murder J.L. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

6.   Between on or about December 12, 2017, through December 17, 2017, within the Central District of California, and elsewhere, defendant ORTIZ, together with others, conspired to murder E.O. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

7.   Between on or about December 24, 2017, through December 25, 2017, within the Central District of California, and elsewhere, defendants MARTINEZ and MEJIA, together with others, conspired to murder R.M. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

8.   Between on or about December 28, 2017, through December 31, 2019, within the Central District of California, and elsewhere, defendants MARTINEZ, AGUIRRE, MEJIA, and R. MARTINEZ, together with others, conspired to murder M.C. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

9.    Between on or about July 17, 2020, through July 29, 2020, within the Central District of California, and elsewhere, defendant MARTINEZ, together with others, conspired to murder F.B. with malice aforethought, and willfully, deliberately, and with premeditation, in violation of California Penal Code Sections 182, 187, and 189.

47

COUNT TWO

[21 U.S.C. § 846]

[DEFENDANTS MARTINEZ, AGUIRRE, ORTIZ, VASQUEZ, COOPER, GUARJARDO, CAMPOS, CANALES, N. GALVAN, L. GALVAN, and ROBLES]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than in or around 2016, and continuing through at least in or around April 2022, in Orange County, within the Central District of California, and elsewhere, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop" ("MARTINEZ"), ROBERT AGUIRRE, aka "Rob" ("AGUIRRE"), DENNIS ORTIZ, aka "Woody," aka "Socrates" ("ORTIZ"), LUIS HERIBERTO VASQUEZ, aka "Moss," aka "Little Shooter," aka "Shooter" ("VASQUEZ"), MICHAEL COOPER, aka "Shaggy" ("COOPER"), ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy"  ("GUARJARDO"), BRENDA VANESSA CAMPOS MARTINEZ, aka "Miss V," aka "Vanessa" ("CAMPOS"), DANIELLE CANALES ("CANALES"), NATIVIDAD GALVAN, aka "Naty" ("N. GALVAN"), LORENZO GALVAN, aka "Lalo" ("L. GALVAN"), and LORRAINE ROBLES ("ROBLES"), conspired with each other, and others known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute, the following controlled substances:

a.   At least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i); and

1          b.    At least 50 grams of methamphetamine, a Schedule II

2    controlled substance, in violation of Title 21, United States Code,

3    Sections 841(a)(1), (b)(1)(A)(viii).

4    B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

5         <u>ACCOMPLISHED</u>

6         The objects of the conspiracy were to be accomplished, in

7    substance, as follows:

8         1.   Defendant MARTINEZ would arrange for members and associates

9    of the OC Mexican Mafia Enterprise to obtain heroin and

10   methamphetamine from specific drug suppliers, including defendants

11   N. GALVAN, L. GALVAN, and ROBLES, and a co-conspirator known to the

12   Grand Jury ("co-conspirator #1"), in exchange for a reduced portion

13   of (or tax on) the profits.

14        2.   Defendants VASQUEZ, COOPER, and GUARJARDO, acting on behalf

15   of defendants MARTINEZ, AGUIRRE, and ORTIZ, would facilitate and

16   coordinate the purchase of heroin and methamphetamine to be

17   distributed and sold by members and associates of the OC Mexican

18   Mafia Enterprise and the collection of taxes on the profits.

19        3.   Defendants CANALES, N. GALVAN, L. GALVAN, and ROBLES, along

20   with co-conspirator #1, would distribute controlled substances,

21   including methamphetamine and heroin, to members and associates of

22   the OC Mexican Mafia Enterprise.

49

4.   Defendants VASQUEZ, COOPER, GUARJARDO, CAMPOS, and CANALES would arrange for and collect profits or "taxes" from individuals who were selling drugs in areas controlled by the OC Mexican Mafia Enterprise.

5.   The members of the conspiracy would use telephones to facilitate their drug trafficking activities.

6.   The members of the conspiracy would use various methods to conceal the conspiracy and their unlawful drug distribution activities in order to ensure the continuing existence and success of the conspiracy, including, but not limited to, communicating in coded language and using encrypted messaging services.

C.   OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts, in the Central District of California, and elsewhere, including, but not limited to, the overt acts numbered 1 through 148, as set forth in Count One and hereby incorporated as if fully set forth herein.

COUNT THREE

[18 U.S.C. §§ 1959(a)(1), 2(a)]

[DEFENDANTS MARTINEZ, MUNOZ, CORDOVA, and VALENZUELA]

1.    At times relevant to this First Superseding Indictment, the OC Mexican Mafia, as more fully described in Paragraphs 1 through 18 of Count One of this First Superseding Indictment, which are re-alleged and incorporated here, including its leadership, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.    At all times relevant to this First Superseding Indictment, the OC Mexican Mafia, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely: (1) acts involving murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664; (2) acts involving extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524 and 664; (3) acts involving robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, and 664; (4) offenses involving trafficking in controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and (5) acts

51

indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce by robbery and extortion).

3.     On or about January 19, 2017, in Orange County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," GREGORY MUNOZ, aka "Louie," aka "Louis," aka "Snoopy," aka "Snoop," YSRAEL JACOB CORDOVA, aka "Trips," and RICARDO VALENZUELA, aka "Solo," each aiding and abetting the other, murdered R.R., in violation of California Penal Code Sections 31, 187, and 189.

52

COUNT FOUR

[18 U.S.C. §§ 924(j)(1), 2(a)]

[DEFENDANTS MARTINEZ, MUNOZ, VALENZUELA, and CORDOVA]

On or about January 19, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," GREGORY MUNOZ, aka "Louie," aka "Louis," aka "Snoopy," aka "Snoop," YSRAEL JACOB CORDOVA, aka "Trips," and RICARDO VALENZUELA, aka "Solo," each aiding and abetting the other, in the course of a violation of Title 18, United States Code, Section 924(c), namely, the knowing possession of a firearm in furtherance of, and the knowing use, carry, brandish, and discharge of a firearm during and in relation to, a crime of violence for which a person may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Three of this First Superseding Indictment, caused the death of R.R. through the use of a firearm, which killing constituted murder, as defined in Title 18, United States Code, Section 1111(a).

53

COUNT FIVE

[18 U.S.C. §§ 1959(a)(1), 2(a)]

[DEFENDANTS MARTINEZ, TREJO, MENDEZ, and ESCOBAR]

1.     Paragraphs 1 and 2 of Count Three of this First Superseding Indictment are realleged and incorporated here.

2.     On or about August 21, 2017, in Orange County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," KEVIN TREJO, "Minor," JAMES MENDEZ, aka "Lil Buck," aka "Buck," and MIKE ESCOBAR, aka "Risky," each aiding and abetting the other, murdered R.V., in violation of California Penal Code Sections 31, 187, and 189.

COUNT SIX

[18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), (j)(1), 2(a)]

[DEFENDANTS MARTINEZ, TREJO, MENDEZ, and ESCOBAR]

On or about August 21, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," KEVIN TREJO, "Minor," JAMES MENDEZ, aka "Lil Buck," aka "Buck," and MIKE ESCOBAR, aka "Risky," each aiding and abetting the other, knowingly possessed a firearm in furtherance of, and knowingly used and carried a firearm during and in relation to, a crime of violence for which the defendants may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Five of this First Superseding Indictment, and in the course of said offense, brandished and discharged a firearm.

In the course of possessing, using, carrying, brandishing, and discharging this firearm, defendants MARTINEZ, TREJO, MENDEZ, and ESCOBAR, each aiding and abetting the other, caused the death of R.V. through the use of a firearm, which killing constituted murder, as defined in Title 18, United States Code, Section 1111(a).

55

COUNT SEVEN

[18 U.S.C. §§ 1959(a)(5), (a)(3), 2(a)]

[DEFENDANTS MARTINEZ, MEJIA, MOSQUEDA, and R. MARTINEZ]

1.    Paragraphs 1 and 2 of Count Three of this First Superseding Indictment are realleged and incorporated here.

2.    On or about August 5, 2017, in Orange County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," FRANK MOSQUEDA, aka "Demon," aka "Pride," and ROBERT MARTINEZ, aka "Lil Rob," aka "Blacky," each aiding and abetting the other, committed an attempted murder and an assault with a dangerous weapon, namely, a firearm, upon the person of Gregory Munoz, in violation of California Penal Code Sections 21a, 31, 187, 189, 245(a)(2), and 664.

COUNT EIGHT

[18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), 2(a)]

[DEFENDANT MARTINEZ, MEJIA, MOSQUEDA, and R. MARTINEZ]

On or about August 5, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," FRANK MOSQUEDA, aka "Demon," aka "Pride," and ROBERT MARTINEZ, aka "Lil Rob," aka "Blacky," each aiding and abetting the other, knowingly possessed a firearm in furtherance of, and knowingly used and carried a firearm during and in relation to, a crime of violence for which the defendants may be prosecuted in a court of the United States, namely, Attempted Murder in Aid of Racketeering and Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and (a)(3), as charged in of Count Seven this First Superseding Indictment, and in the course of said offense, brandished and discharged a firearm.

57

COUNT NINE

[18 U.S.C. §§ 1959(a)(5), (a)(3), 2(a)]

[DEFENDANTS AGUIRRE and MEJIA]

1.      Paragraphs 1 and 2 of Count Three of this First Superseding Indictment are realleged and incorporated here.

2.      On or about October 25, 2017, in Orange County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants ROBERT AGUIRRE, also known as ("aka") "Rob," and OMAR MEJIA, aka "Cruz," aka "Rascal," along with others known to the Grand Jury, each aiding and abetting the other, committed an attempted murder and an assault with a dangerous weapon, namely, a firearm, upon the person of J.L., in violation of California Penal Code Sections 21a, 31, 187, 189, 245(a)(2), and 664.

COUNT TEN

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2(a)]

[DEFENDANTS AGUIRRE and MEJIA]

On or about October 25, 2017, in Orange County, within the Central District of California, defendants ROBERT AGUIRRE, also known as ("aka") "Rob," and OMAR MEJIA, aka "Cruz," aka "Rascal," along with others known to the Grand Jury, each aiding and abetting the other, knowingly possessed a firearm in furtherance of, and knowingly used and carried a firearm during and in relation to, a crime of violence for which the defendants may be prosecuted in a court of the United States, namely, Attempted Murder in Aid of Racketeering and Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and (a)(3), as charged in Count Nine of this First Superseding Indictment, and in the course of said offense, brandished and discharged a firearm.

COUNT ELEVEN

[18 U.S.C. §§ 1959(a)(5), (a)(6), 2(a)]

[DEFENDANTS MARTINEZ, MEJIA, J. MARTINEZ, and GONZALEZ]

1.    Paragraphs 1 and 2 of Count Three of this First Superseding Indictment are realleged and incorporated here.

2.    On or about December 25, 2017, in Orange County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," JONATHAN MARTINEZ, aka "Fabian," aka "Peanut," and ALEX GONZALEZ, aka "Hitman," aka "Hector," along with others known and unknown to the Grand Jury, each aiding and abetting the other, committed an attempted murder and an attempted assault with a dangerous weapon, namely, a firearm, upon the person of R.M., in violation of California Penal Code Sections 21a, 31, 187, 189, 245(a)(2), and 664.

COUNT TWELVE

[18 U.S.C. §§ 924(c)(1)(A)(i), 2(a)]

[DEFENDANTS MARTINEZ, MEJIA, J. MARTINEZ, and GONZALEZ]

On or about December 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," JONATHAN MARTINEZ, aka "Fabian," aka "Peanut," and ALEX GONZALEZ, aka "Hitman," aka "Hector," each aiding and abetting the other, knowingly possessed a firearm in furtherance of, and knowingly carried a firearm during and in relation to, a crime of violence for which the defendants may be prosecuted in a court of the United States, namely, Attempted Murder in Aid of Racketeering and Attempted Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and (a)(6), as charged in Count Eleven of this First Superseding Indictment.

61

COUNT THIRTEEN

[18 U.S.C. §§ 1959(a)(5), (a)(6), 2(a)]

[DEFENDANTS MARTINEZ, MEJIA, ZAYAS, HERRERA,

M. COOPER, ARBALLO, and MORENO]

1.    Paragraphs 1 and 2 of Count Three of this First Superseding Indictment are realleged and incorporated here.

2.    On or about December 25, 2017, in Orange County, within the Central District of California, for the purpose of maintaining and increasing their position in the OC Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," ROBERTO ZAYAS, aka "Midnight," SAUL HERRERA, aka "Sinner," MARK COOPER, aka "Reckless," ORLANDO ARBALLO, aka "KO," and MEGAN MORENO, along with others known and unknown to the Grand Jury, each aiding and abetting the other, committed an attempted murder and an attempted assault with a dangerous weapon, namely, a firearm, upon the person of R.M., in violation of California Penal Code Sections 21a, 31, 187, 189, 245(a)(2), and 664.

COUNT FOURTEEN

[18 U.S.C. §§ 924(c)(1)(A)(i), 2(a)]

[DEFENDANT MARTINEZ, MEJIA, ZAYAS, HERRERA,

M. COOPER, ARBALLO, and MORENO]

On or about December 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," OMAR MEJIA, aka "Cruz," aka "Rascal," ROBERTO ZAYAS, aka "Midnight," SAUL HERRERA, aka "Sinner," MARK COOPER, aka "Reckless," ORLANDO ARBALLO, aka "KO," and MEGAN MORENO, each aiding and abetting the other, knowingly possessed a firearm in furtherance of, and knowingly carried a firearm during and in relation to, a crime of violence, for which the defendants may be prosecuted in a court of the United States, namely, Attempted Murder in Aid of Racketeering and Attempted Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and (a)(6), as charged in Count Thirteen of this First Superseding Indictment.

63

COUNT FIFTEEN

[18 U.S.C. §§ 1959(a)(5), (a)(3), 2(a)]

[DEFENDANTS MARTINEZ, AGUIRRE, MEJIA, R. MARTINEZ,

DARBINYAN, and AMEZCUA]

1.     Paragraphs 1 and 2 of Count Three of this First Superseding
Indictment are realleged and incorporated here.

2.     On or about December 31, 2019, in Orange County, within the
Central District of California, for the purpose of gaining entrance
to and maintaining and increasing position in the OC Mexican Mafia,
an enterprise engaged in racketeering activity, defendants JOHNNY
MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ROBERT
AGUIRRE, aka "Rob," OMAR MEJIA, aka "Cruz," aka "Rascal," ROBERT
MARTINEZ, aka "Lil Rob," aka "Blacky," MHER DARBINYAN, aka "Hollywood
Mike," and ROBERT AMEZCUA, aka "Flaco," each aiding and abetting the
other, committed an attempted murder and an assault with a dangerous
weapon, specifically, a metal object with a sharp edge, commonly
known as a "shiv," upon the person of Michael Cooper, in violation of
California Penal Code Sections 21a, 31, 187, 189, 245(a)(1), and 664.

64

COUNT SIXTEEN

[21 U.S.C §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and ROBLES]

On or about April 21, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORRAINE ROBLES, each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

65

COUNT SEVENTEEN

[21 U.S.C §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and ROBLES]

On or about April 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORRAINE ROBLES, each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

66

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and N. GALVAN]

On or about May 3, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and NATIVIDAD GALVAN, aka "Naty," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 54.5 grams, of methamphetamine, a Schedule II controlled substance.

67

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

[DEFENDANT ROBLES]

On or about May 16, 2017, in Orange County, within the Central District of California, LORRAINE ROBLES knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 370 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

68

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2(a)]

[DEFENDANT MARTINEZ, GUARJARDO, and N. GALVAN]

On or about May 19, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and NATIVIDAD GALVAN, aka "Naty," each aiding and abetting the other, knowingly and intentionally distributed at least five grams, that is, approximately 28.14 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-ONE

[21 U.S.C §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and N. GALVAN]

On or about May 19, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and NATIVIDAD GALVAN, aka "Naty," each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

70

COUNT TWENTY-TWO

[21 U.S.C §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and N. GALVAN]

On or about May 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and NATIVIDAD GALVAN, aka "Naty," each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

71

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and N. GALVAN]

On or about May 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and NATIVIDAD GALVAN, aka "Naty," each aiding and abetting the other, knowingly and intentionally distributed at least five grams, that is, approximately 27.44 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and L. GALVAN]

On or about June 6, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORENZO GALVAN, aka "Lalo," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 57 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and L. GALVAN]

On or about June 6, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORENZO GALVAN, aka "Lalo," each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

74

COUNT TWENTY-SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and L. GALVAN]

On or about June 30, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORENZO GALVAN, aka "Lalo," each aiding and abetting the other, knowingly and intentionally distributed at least five grams, that is, approximately 26.2 grams, of methamphetamine, a Schedule II controlled substance.

75

COUNT TWENTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and L. GALVAN]

On or about June 30, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORENZO GALVAN, aka "Lalo," each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

COUNT TWENTY-EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ, GUARJARDO, and L. GALVAN]

On or about August 17, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," ABRAHAM GUARJARDO, aka "Abe," aka "Grumpy," and LORENZO GALVAN, aka "Lalo," each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

77

COUNT TWENTY-NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS MARTINEZ and CANALES]

On or about July 25, 2017, in Orange County, within the Central District of California, defendants JOHNNY MARTINEZ, also known as ("aka") "Crow," aka "Gumdrop," and DANIELLE CANALES, each aiding and abetting the other, knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

78

COUNT THIRTY

[18 U.S.C. § 922(g)(1)]

[DEFENDANT ALBA]

On or about December 13, 2017, in Orange County, within the Central District of California, defendant ANDRES ALBA, also known as ("aka") "Doctor," aka "Dre," knowingly possessed a firearm, namely, a Ruger, .32 H&R Magnum caliber revolver, bearing serial number 650-52895, and ammunition, namely, six rounds of Aguila .32 Smith & Wesson caliber full metal jacket ammunition, each in and affecting interstate and foreign commerce.

Defendant ALBA possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Unlawful Taking of a Vehicle, in violation of California Penal Code Section 10851(a), in the Superior Court of the State of California, County of Orange, case number 09NF0546, on or about March 2, 2009;

(2)   Second Degree Commercial Burglary, in violation of California Penal Code Section 459-460(b), in the Superior Court of the State of California, County of Orange, case number 09NF1489, on or about June 23, 2009;

(3)   Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(a)(1), in the Superior Court of

79

the County of Orange, case number 10NF1719, on or about June 17,
2010;

(4)   Possession for Sale of a Controlled Substance, in violation
of California Health & Safety Code Section 11378, in the Superior
Court of the State of California, County of Orange, case number
10NF1719, on or about June 17, 2010.

80

COUNT THIRTY-ONE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT GONZALEZ]

On or about December 25, 2017, in Orange County, within the Central District of California, defendant ALEX GONZALEZ, also known as ("aka") "Hitman," aka "Hector," knowingly possessed a firearm, namely, a Taurus, Model PT111 G2, 9mm pistol, bearing serial number TIT18738, and ammunition, namely, 12 rounds of Sig Sauer 9mm Luger hollow point ammunition, each in and affecting interstate and foreign commerce.

Defendant GONZALEZ possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) First Degree Burglary, in violation of California Penal Code Sections 459, 460(a), in the Superior Court of the State of California, County of Orange, case number 10NF0919, on or about December May 5, 2011;

(2) Unlawful Taking of a Vehicle, in violation of California Vehicle Code Section 10851(a), in the Superior Court of the State of California, County of Orange, case number 10NF0919, on or about December May 5, 2011;

(3) Inflicting Corporal Injury on a Spouse/Cohabitant/Date, in violation of California Penal Code Section 273.5(a), in the Superior

Court of the State of California, County of Orange, case number
15WF1424, on or about September 23, 2015;

    (4)   Assault with Force Likely to Produce Great Bodily Injury,
in violation of California Penal Code Section 245(a)(4), in the
Superior Court of the State of California, County of Orange, case
number 15WF1424, on or about September 23, 2015.

COUNT THIRTY-TWO

[18 U.S.C. § 922(g)(1)]

[DEFENDANT J. MARTINEZ]

On or about December 25, 2017, in Orange County, within the Central District of California, defendant JONATHAN MARTINEZ, also known as ("aka") "Fabian," aka "Peanut," knowingly possessed a firearm, namely, a Glock, Model 22, .40 caliber pistol, bearing serial number AVN421US, and ammunition, namely, one round of Federal .40 Smith & Wesson caliber ammunition, two rounds of Winchester .40 Smith & Wesson caliber full metal jacket ammunition, two rounds of Jagemann .40 Smith & Wesson caliber hollow point ammunition, two rounds of Remington Peters .40 Smith & Wesson caliber hollow point ammunition, and seven rounds of Sig Sauer .40 Smith & Wesson caliber hollow point ammunition, each in and affecting interstate and foreign commerce.

Defendant J. MARTINEZ possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Assault with a Deadly Weapon, Great Bodily Injury Likely, in violation of California Penal Code Section 245(a)(1), in the Superior Court of the State of California, County of Orange, case number 09CF0297, on or about November 1, 2011;

(2)  Assault on a Person with a Semi-Automatic Firearm, in violation of California Penal Code Section 245(b), in the Superior

Court of the State of California, County of Orange, case number
10CF1078, on or about November 1, 2011;

    (3)   Evading a Peace Officer, in violation of California Vehicle
Code Section 2800.2, in the Superior Court of the State of
California, County of Orange, case number 10CF1078, on or about
November 1, 2011.

COUNT THIRTY-THREE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT ARBALLO]

On or about December 25, 2017, in Orange County, within the Central District of California, defendant ORLANDO ARBALLO, also known as "KO," knowingly possessed a firearm, namely, Taurus, .357 Magnum caliber revolver, bearing serial number LL718536, and ammunition, namely, 12 rounds of Federal .357 Magnum caliber hollow point ammunition, each in and affecting interstate and foreign commerce.

Defendant ARBALLO possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Robbery Second Degree, in violation of California Penal Code Section 212.5(c), in the Superior Court of the State of California, County of Orange, case number 11CF0570, on or about January 30, 2012;

(2)   Evading Peace Officer with Disregard for Safety, in violation of California Vehicle Code Section 2800.2, in the Superior Court of the State of California, County of Orange, case number 14CF0886, on or about August 9, 2014;

(3)   Transport/Sell/Furnishing a Controlled Substance, in violation of California Health & Safety Code Section 11379(a), in the Superior Court of the State of California, County of Orange, case number 14CF0886, on or about August 9, 2014;

(4)  Taking a Vehicle Without the Owner's Consent/Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court of the State of California, County of Orange, case number 14CF0886, on or about August 9, 2014.

86

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.   Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this First Superseding Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   Any interest the convicted defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962;

(b)   Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962;

(c)   Any property constituting, or derived from, any proceeds which the convicted defendant obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962; and

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property

described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant(s), the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Section 924, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two or Sixteen through Twenty-Nine of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense;

(c)   All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

89

3.    Pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant(s), the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Three, Five, Seven, Nine, Eleven, Thirteen, or Fifteen of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b)   All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant(s), the property

91

described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Four, Six, Eight, Ten, Twelve, Fourteen, or Thirty through Thirty-Three of this First Superseding Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant(s), the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been

placed beyond the jurisdiction of the court; (d) has been
substantially diminished in value; or (e) has been commingled with
other property that cannot be divided without difficulty.

SENTENCING ALLEGATIONS

[21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(viii),

(b)(1)(B)(i), (b)(1)(B)(viii)]

1.    Defendant JOHNNY MARTINEZ, also known as "Crow," also known as "Gumdrop," prior to committing the offenses alleged in Counts Two, Eighteen, Twenty, Twenty-Three, Twenty-Four, and Twenty-Six of this First Superseding Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 851, namely, Murder, in violation of California Penal Code Section 187, in the Superior Court of the State of California, County of Orange, case number 94NF0824, on or about January 5, 1995, for which defendant MARTINEZ served a term number of imprisonment of more than 12 months.

2.    Defendant ROBERT AGUIRRE, also known as "Rob," prior to committing the offense alleged in Count Two of this First Superseding Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 851, namely, Murder in the Second Degree, in violation of California Penal Code Section 187, in the Superior Court of the State of California, County of Orange, case number C-94002, on or about May 24, 1993, for which defendant AGUIRRE served a term number of imprisonment of more than 12 months.

3.    Defendant DENNIS ORTIZ, also known as "Woody," prior to committing the offense alleged in Count Two of this First Superseding Indictment, had been finally convicted of the following serious

violent felonies as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 851:

a.   Murder in the Second Degree, in violation of California Penal Code Section 187, in the Superior Court of the State of California, County of Los Angeles, case number A620994, on or about December 16, 1981, for which defendant ORTIZ served a term number of imprisonment of more than 12 months.

b.   Assault with a Deadly Weapon, in violation of California Penal Code Section 245, in the Superior Court of the State of California, County of Los Angeles, case number A620631, on or about December 16, 1981, for which defendant ORTIZ served a term number of imprisonment of more than 12 months.

4.   Defendant MICHAEL COOPER, also known as "Shaggy," prior to committing the offense alleged in Count Two of this First Superseding Indictment, had been finally convicted of the following serious violent felonies as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 851:

a.   Carjacking, in violation of California Penal Code Section 215, in the Superior Court of the State of California, County of Orange, case number 00CF0420, on or about March 10, 2000, for which defendant COOPER served a term number of imprisonment of more than 12 months.

b.   Attempted Murder, in violation of California Penal Code Section 187, in the Superior Court of the State of California, County of Orange, case number 06CF0353, on or about July 31, 2006,

96

1   for which defendant COOPER served a term number of imprisonment of

2   more than 12 months.

3       5.    Defendant ABRAHAM GUARJARDO, also known as "Abe," also

4   known as "Grumpy," prior to committing the offenses alleged in Counts

5   Two, Eighteen, Twenty, Twenty-Three, Twenty-Four, and Twenty-Six of

6   this First Superseding Indictment, had been finally convicted of the

7   following serious violent felonies as that term is defined and used

8   in Title 21, United States Code, Sections 802(58), 841, and 851:

9           a.    Attempted Murder, in violation of California Penal

10  Code Section 187, in the Superior Court of the State of California,

11  County of Los Angeles, case number VA003175, on or about May 24,

12  1990, for which defendant GUARJARDO served a term of imprisonment of

13  more than 12 months.

14          b.    Murder in the First Degree, in violation of California

15  Penal Code Section 187, in the Superior Court of the State of

16  California, County of Orange, case number 05NF2426, on or about June

17  21, 2006, for which defendant GUARJARDO served a term of imprisonment

18  of more than 12 months.

19      6.    Defendant NATIVIDAD GALVAN, also known as "Naty," prior to

20  committing the offenses alleged in Counts Two, Eighteen, Twenty, and

21  Twenty-Three of this First Superseding Indictment, had been finally

22  convicted of the following serious drug felonies as that term is

23  defined and used in Title 21, United States Code, Sections 802(57),

24  841, and 851:

25

26                                      97

27

28

1          a.   Possession of Controlled Substance for Sale, in

2    violation of California Health & Safety Code Section 11378, in the

3    Superior Court of the State of California, County of Orange, case

4    number 01HF0697, on or about July 11, 2001, for which defendant

5    N. GALVAN served a term of imprisonment of more than 12 months.

6    Defendant N. GALVAN was released from a term of imprisonment for that

7    offense within 15 years of the commencement of the offenses alleged

8    in Counts Two, Eighteen, Twenty, and Twenty-Three of this First

9    Superseding Indictment.

10          b.   Transportation or Selling Controlled Substance, in

11   violation of California Health & Safety Code Section 11379, in the

12   Superior Court of the State of California, County of Orange, case

13   number 03NF0561, on or about August 25, 2003, for which defendant

14   N. GALVAN served a term of imprisonment of more than 12 months.

15   Defendant N. GALVAN was released from a term of imprisonment for that

16   offense within 15 years of the commencement of the offenses alleged

17   in Counts Two, Eighteen, Twenty, and Twenty-Three of this First

18   Superseding Indictment.

19          c.   Possession of Controlled Substance for Sale, in

20   violation of California Health & Safety Code Section 11378, and

21   Transportation or Selling Controlled Substance, in violation of

22   California Health & Safety Code Section 11379, in the Superior Court

23   of the State of California, County of Orange, case number 11NF1493,

24   on or about February 11, 2014, for which defendant N. GALVAN served a

25   term of imprisonment of more than 12 months.  Defendant N. GALVAN was

26

27

28

released from a term of imprisonment for that offense within 15 years of the commencement of the offenses alleged in Counts Two, Eighteen, Twenty, and Twenty-Three of this First Superseding Indictment.

7.    Defendant LORRAINE ROBLES, prior to committing the offenses alleged in Counts Two and Nineteen of this First Superseding Indictment, had been finally convicted of a serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(57), 841, and 851, namely, Transportation for Sale of Controlled Substance, in violation of California Health & Safety Code Sections 11352 and 11379, in the Superior Court of the State of California, County of Orange, case number 13CF3711, on or about December 11, 2013, for which defendant ROBLES served a term number of imprisonment of more than 12 months.  Defendant ROBLES was released from a term of imprisonment for that offense within 15 years of the commencement of the offenses alleged in Counts Two and Nineteen of this First Superseding Indictment.

1        <u>NOTICE OF SPECIAL FINDINGS AS TO COUNTS THREE AND FOUR</u>

2        The allegations contained in Counts Three and Four of this First

3   Superseding Indictment are re-alleged and incorporated here.

4        Defendant JOHNNY MARTINEZ, aka "Crow," aka "Gumdrop":

5        1.   Was 18 years of age or older at the time of the

6   offense (18 U.S.C. § 3591(a));

7        2.   Intentionally participated in an act, contemplating

8   that the life of a person would be taken or intending that lethal

9   force would be used in connection with a person, other than one of

10  the participants in the offense, and the victim died as a direct

11  result of the act (18 U.S.C. § 3591(a)(2)(C)); and

12       3.   Intentionally and specifically engaged in an act of

13  violence, knowing that the act created a grave risk of death to a

14  person, other than one of the participants in the offense, such that

15  participation in the act constituted a reckless disregard for human

16  life and R.R. died as a direct result of the act (18 U.S.C.

17  § 3591(a)(2)(D)).

18       Defendant GREGORY MUNOZ, aka "Louie," aka "Louis," aka "Snoopy,"

19  aka "Snoop":

20       1.   Was 18 years of age or older at the time of the

21  offense (18 U.S.C. § 3591(a));

22       2.   Intentionally participated in an act, contemplating

23  that the life of a person would be taken or intending that lethal

24  force would be used in connection with a person, other than one of

25

26                                    100

27

28

the participants in the offense, and the victim died as a direct
result of the act (18 U.S.C. § 3591(a)(2)(C)); and

      3.   Intentionally and specifically engaged in an act of
violence, knowing that the act created a grave risk of death to a
person, other than one of the participants in the offense, such that
participation in the act constituted a reckless disregard for human
life and R.R. died as a direct result of the act (18 U.S.C.
§ 3591(a)(2)(D)).

    Defendant YSRAEL JACOB CORDOVA, aka "Trips":

      1.   Was 18 years of age or older at the time of the
offense (18 U.S.C. § 3591(a));

      2.   Intentionally killed R.R. (18 U.S.C. § 3591(a)(2)(A));

      3.   Intentionally inflicted serious bodily injury that
resulted in the death of R.R. (18 U.S.C. § 3591(a)(2)(B));

      4.   Intentionally participated in an act, contemplating
that the life of a person would be taken or intending that lethal
force would be used in connection with a person, other than one of
the participants in the offense, and the victim died as a direct
result of the act (18 U.S.C. § 3591(a)(2)(C)); and

      5.   Intentionally and specifically engaged in an act of
violence, knowing that the act created a grave risk of death to a
person, other than one of the participants in the offense, such that
participation in the act constituted a reckless disregard for human
life and R.R. died as a direct result of the act (18 U.S.C.
§ 3591(a)(2)(D).

Defendant RICARDO VALENZUELA, aka "Solo":

     1.   Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

     2.   Intentionally killed R.R. (18 U.S.C. § 3591(a)(2)(A));

     3.   Intentionally inflicted serious bodily injury that resulted in the death of R.R. (18 U.S.C. § 3591(a)(2)(B));

     4.   Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); and

     5.   Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and R.R. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)).

<u>NOTICE OF SPECIAL FINDINGS AS TO COUNTS FIVE AND SIX</u>

The allegations contained in Counts Five and Six of this First Superseding Indictment are re-alleged and incorporated here.

Defendant JOHNNY MARTINEZ, aka "Crow," aka "Gumdrop":

1.    Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

2.    Intentionally killed R.V. (18 U.S.C. § 3591(a)(2)(A));

3.    Intentionally inflicted serious bodily injury that resulted in the death of R.V. (18 U.S.C. § 3591(a)(2)(B));

4.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

5.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and R.V. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)); and

6.    Committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)).

Defendant KEVIN TREJO, aka "Minor":

103

1        1.   Was 18 years of age or older at the time of the

2   offense (18 U.S.C. § 3591(a));

3        2.   Intentionally killed R.V. (18 U.S.C. § 3591(a)(2)(A));

4        3.   Intentionally inflicted serious bodily injury that

5   resulted in the death of R.V. (18 U.S.C. § 3591(a)(2)(B));

6        4.   Intentionally participated in an act, contemplating

7   that the life of a person would be taken or intending that lethal

8   force would be used in connection with a person, other than one of

9   the participants in the offense, and the victim died as a direct

10  result of the act (18 U.S.C. § 3591(a)(2)(C));

11       5.   Intentionally and specifically engaged in an act of

12  violence, knowing that the act created a grave risk of death to a

13  person, other than one of the participants in the offense, such that

14  participation in the act constituted a reckless disregard for human

15  life and R.V. died as a direct result of the act (18 U.S.C.

16  § 3591(a)(2)(D)); and

17       6.   Committed the offense after substantial planning and

18  premeditation to cause the death of a person (18 U.S.C.

19  § 3592(c)(9)).

20  Defendant JAMES MENDEZ, aka "Lil Buck," aka "Buck":

21       1.   Was 18 years of age or older at the time of the

22  offense (18 U.S.C. § 3591(a));

23       2.   Intentionally killed R.V. (18 U.S.C. § 3591(a)(2)(A));

24       3.   Intentionally inflicted serious bodily injury that

25  resulted in the death of R.V. (18 U.S.C. § 3591(a)(2)(B));

26                                104

27

28

4.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

5.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and R.V. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)); and

6.    Committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9).

Defendant MIKE ESCOBAR, aka "Risky":

1.    Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

2.    Intentionally killed R.V. (18 U.S.C. § 3591(a)(2)(A));

3.    Intentionally inflicted serious bodily injury that resulted in the death of R.V. (18 U.S.C. § 3591(a)(2)(B));

4.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

          5.   Intentionally and specifically engaged in an act of
violence, knowing that the act created a grave risk of death to a
person, other than one of the participants in the offense, such that
participation in the act constituted a reckless disregard for human
life and R.V. died as a direct result of the act (18 U.S.C.
§ 3591(a)(2)(D)); and

          6.   Committed the offense after substantial planning
and premeditation to cause the death of a person (18 U.S.C.
§ 3592(c)(9)).

                              A TRUE BILL


                              _____/s/_____
                              Foreperson

TRACY L. WILKISON
United States Attorney


*Christina Shing for SMG*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

DAVID L. JAFFE
Chief, Organized Crime and Gang Section
U.S. Department of Justice

DANIEL AHN
GREGORY SCALLY
Assistant United States Attorneys
Santa Ana Branch Office

MARIANNE SHELVEY
DANBEE KIM
Trial Attorneys
Organized Crime and Gang Section
U.S. Department of Justice

                              106